IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

FRANK CHANCELLOR                                                              PLAINTIFF

VS.                             Case No. 04-CV-1086

POTLATCH CORPORATION                                                          DEFENDANT

## MEMORANDUM OPINION

This lawsuit involves Plaintiff Frank Chancellor's allegations of discrimination by Defendant Potlatch Corporation ("Potlatch") in violation of the Family and Medical Leave Act (29 U.S.C. § 2601 et seq.)("FMLA"), the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.)("ADA"), the Age Discrimination in Employment Act (29 U.S.C. § 621 et seq.)("ADEA"), and the Arkansas Civil Rights Act of 1993 (Ark. Code Ann. § 16-123-101 et seq.)("ACRA"). Before the Court is Potlatch's First Motion for Summary Judgment. (Doc. 8). Chancellor has responded. (Doc 16). Potlatch has also filed a Reply and a Motion to Strike. (Doc. 19). Chancellor has responded to Potlatch's Motion to Strike. (Doc. 20). The Court finds these motions ripe for consideration.

**I.     Background**

Chancellor began his employment with Potlatch on January 5, 1970, as a welder in the machine shop at Potlatch's Southern mill in Warren, Arkansas. During his employment with Potlatch, Chancellor worked in various positions and held many job titles.

Sometime in late October 2002, Chancellor took one week's vacation. During his vacation, Chancellor visited a physician and went on medical leave for back problems. Chancellor was terminated from his employment with Potlatch on November 18, 2002, although he remained on the Potlatch payroll until the end of March 2003, because he was on leave of absence and short-term disability leave. When Chancellor was terminated, he held the position of dry end remanufacturing superintendent. His supervisor was Dwane Clark, the Plant Manager

-1-

at the Southern mill.  Potlatch claims Chancellor's position was eliminated, along with four other employees, as part of a reduction-in-force program implemented in October 2003, when Potlatch began experiencing financial difficulties.  Potlatch claims that between October 1 and October 3, 2002, Potlatch's management committee met to evaluate earnings and discussed a potential reduction-in-force, then Potlatch's individual locations were notified that a reduction-in-force was necessary.  Potlatch claims that Clark submitted five names of employees whose positions were to be eliminated: Scott Morgan, Tim Mitchell, Peggy Buckles, Virginia Mann, and Chancellor.  Out of these five employees, only Mann and Chancellor were over the age of forty.  Potlatch claims that Clark decided to eliminate Chancellor's position because it could be absorbed into other existing job positions or would be eliminated altogether.

In 1992, Chancellor took two months' medical leave for a heart condition and Chancellor was released to work with no conditions.  Potlatch had a job posting system and Chancellor did not bid on any open positions or talk with anyone to express an interest in an open position.  Potlatch argues that Mann, who was laid off at the same time as Chancellor, was offered a position.  Chancellor claims that statements were made by upper management to Clark that Chancellor should be terminated because of his health, Potlatch was not having financial difficulties which would justify a reduction-in-force, and Clark did not submit the names to be terminated.  Chancellor also argues that Scott Alexander and Roger Kelley had made comments reflecting an age-bias and were decision makers with regard to the decision to terminate him.  Chancellor claims he and Mann received less favorable treatment than the other employees affected by the reduction-in-force.

**II.     Discussion**

The standard of review for a motion for summary judgment is familiar and established. The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law.

-2-

Fed. R. Civ. P. 56(c); Krenik v. County of Le Sueur, 47 F.3d 953 (8th Cir. 1995).

The Supreme Court has issued the following guidelines to help determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial . . . whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). See also Agristor Leasing v. Farrow, 826 F.2d 372 (8th Cir. 1987); Niagra of Wisconsin Paper Corp. v. Paper Indus. Union-Management Pension Fund, 800 F.2d 742, 746 (8th Cir. 1986).

The burden of proof is on the moving party to set forth the basis of its motion. Donovan v. Harrah's Maryland Heights Corp., 289 F.3d 527, 529 (8th Cir. 2002), citing Celotex Corp v. Catrett, 477 U.S. 317, 323 (1986). The Court must view all facts and inferences in the light most favorable to the nonmoving party. Id., citing Matsushia Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986). The Eight Circuit Court of Appeals, in Scheer Const. Co. v. Greater Huron Development Corp., 700 F.2d 463, 465 (8th Cir. 1983), quoting Burst v. Adolph Coors Co., 650 F.2d 930, 932 (8th Cir. 1981), in a case involving the entry of summary judgment, stated:

> [w]hen a motion for summary judgment is made and supported by affidavits, the party opposing the motion may not rest on the allegations in his pleadings but must resist the motion by setting forth specific facts that raise a genuine issue of fact for trial.

If a plaintiff has the burden of proof at trial on a claim and the defendant has filed a motion for summary judgment, the plaintiff must identify admissible evidence sufficient to make a submissible case at trial. Celotex, at 323-24. If the plaintiff cannot identify such facts, the defendant is entitled to judgment as a matter of law. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 884 (1990), quoting Celotex, 477 U.S. at 322.

To establish a genuine issue of fact sufficient to warrant trial, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."

Matsushita Elec. Indus. Co., 475 U.S. at 586. Instead, the nonmoving party bears the burden of setting forth specific facts showing there is a genuine issue for trial. Anderson, 477 U.S. at 248.

Potlatch has moved for summary judgment in its favor on each of Chancellor's causes of action, and the Court will consider each of Potlatch's contentions in turn.

### A. **Potlatch's Motion to Strike**

Potlatch has moved to strike Mary Elizabeth Clark's Affidavit as support for Chancellor's Response to its Motion for Summary Judgment. Potlatch argues that Ms. Clark was not identified as a witness during discovery, and, pursuant to Federal Rule of Civil Procedure 37(c)(1) her testimony by affidavit is inadmissible. Rule 37(c)(1) allows a court to strike testimony that was not provided during discovery, unless the failure to disclose was harmless and a substantial justification for the failure is offered. Davis v. U.S. Bancorp, 383 F.3d 761 (8th Cir. 2004). Rule 26(a) requires the disclosure of the identity of persons likely to have discoverable information relevant to disputed facts.

In this case there was no unfair surprise because Potlatch knew of Ms. Clark's role in this case, by virtue of Chancellor's deposition testimony. Therefore, the Court denies Potlatch's Motion to Strike based on Rule 37(c)(1).

Potlatch also moves to strike the Affidavits of Ms. Clark, Kenneth McDougald, Mann and Mitchell as inadmissable hearsay. Inadmissible hearsay may not be considered in determining whether summary judgment should be granted or denied. Runnells v. Land O'Lakes, Inc., 112 F.3d 358, 364 (8th Cir. 1997). Chancellor argues that the statements in the affidavits fit under Federal Rule of Evidence 801(d)(2)(A),(B) and (D), which excludes from the definition of hearsay: a party's own statement, in either an individual or representative capacity; a statement of which the party has manifested an adoption or belief in its truth; or a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship. Chancellor also argues that even if the affidavits are hearsay, they fall within the hearsay exceptions of Rule 803(1),(2) or (3): the exception for

present sense impressions; the exception for statements made relating to a startling event made while the declarant was under the stress of the startling event; or the exception for statements of the declarant's state of mind, emotion, sensation, or physical condition, intent, plan, motive, design, mental healing, pain, or bodily health.

Rule 801(d)(2)(A) provides that the statement of a party made in **either an individual or representative capacity** is not hearsay when it is offered in evidence against the party. Clark's statements are admissible under Rule 801(d)(2)(A). See Stalbosky v. Belew, 205 F.3d 890, 895 (6th Cir. 2000)(affidavit quoting comments of chairman of defendant trucking company was admissible under Rule 801(d)(2)(A) against trucking company). See also, Union Mut. Life Ins. Co. v. Crysler Corp., 793 F.2d 1, 8 (1st Cir. 1986)(Advisory Committee Note expresses intent to excuse party admissions from requirement of personal knowledge). In a similar fashion, the affidavits of Kenneth McDougald, Mann and Mitchell are admissible as non-hearsay admissions. The Court finds the Motion to strike should be denied.

### B. **Potlatch is entitled to summary judgment on Chancellor's FMLA claim**.

Chancellor has no quarrel with the applicable legal standard for his FMLA claim (or for that matter, the applicable legal standards for any of his claims). The summary judgment motion turns on the quality and quantum of the evidence.

The FMLA prohibits employers from discriminating against employees for asserting rights protected by the Act. 29 U.S.C. § 2615. Because Chancellor has no direct (strong) evidence of discrimination the Court applies a variant of the McDonell Douglas Corp. v. Green, 411 U.S. 792, 800-806 (1973) burden-shifting framework. To establish his FMLA discrimination claim, Chancellor has the burden of establishing a prima facie case by demonstrating: (1) that he exercised rights afforded by the FMLA; (2) he suffered an adverse employment action; and (3) there was a causal connection between the exercise of the FMLA rights and the adverse employment action. Smith v. Allen Health Systems, Inc., 302 F.3d 827, 832 (8th Cir. 2002). Assuming Chancellor establishes his prima facie case, the burden shifts to

Potlatch to produce evidence of a legitimate, non-discriminatory reason for the adverse employment action. The burden then shifts to Chancellor to prove that Potlatch's asserted reason is pretextual and discrimination was the real reason for his termination. Erickson v. Farmland Indus., Inc., 271 F.3d 718, 726 (8th Cir. 2001). To show pretext, Chancellor must show that Potlatch's justification for his firing was unworthy of credence. Smith, 302 F.3d at 833-834.

Potlatch argues that Chancellor cannot make out his prima facie case, because he cannot establish, other than by showing a coincidence of timing, that there was a causal connection between the exercise of the FMLA rights and his termination. See Kipp v. Missouri Highway and Transp. Comm'n, 280 F.3d 893, 897 (8th Cir. 2002)(holding that temporal proximity is rarely sufficient to establish a submissible case of retaliatory discharge). In the alternative, Potlatch argues that even if Chancellor could make out his prima facie case, it has a legitimate non-discriminatory reason for the adverse employment action and Chancellor has not met his burden of showing that this reason was pretextual and discrimination was the real reason for his termination.

Chancellor has produced sufficient evidence to meet the burden of establishing his prima facie case. Chancellor has shown a sufficiently strong coincidence of timing to make out a prima facie case (taking FMLA leave in late October and his termination on November 18, 2002). Because Chancellor's prima facie case survives summary judgment, the burden shifts to Potlatch to articulate a legitimate reason for Chancellor's termination. Potlatch has met its burden of production–Potlatch was experiencing financial difficulties and it instituted a reduction-in-force to save costs–so the burden shifts back to Chancellor to satisfy the third prong of his test.

As the Court stated earlier, to survive summary judgment Chancellor must also bring forth sufficient evidence from which a reasonable jury could find that Potlatch's asserted reason is pretextual and discrimination was the real reason for his termination. Erickson v. Farmland Indus., Inc., 271 F.3d 718, 726 (8th Cir. 2001). To show pretext, Chancellor must show that Potlatch's justification for his firing was unworthy of credence. Smith, 302 F.3d at 833-834.

Chancellor has shown a genuine issue of fact as to the identity of the person who decided to terminate Chancellor's position. See Rick Kelly Aff. ¶ 7 "Clark submitted five names for position elimination prior to October 20, 2002. The individuals selected for reduction-in-force were Scott Morgan, Tim Mitchell, Peggy Buckles, Frank Chancellor, and Virginia Mann. Clark made the decision to eliminate Chancellor's position based on the fact that the job duties of that position could be absorbed into other existing job positions." But see Clark Aff. ¶ 1 "Dwayne [Clark] told me that whoever was over him at the time had given him a list of names of people who he had to let go . . . Dwayne [Clark] did not want to let Frank Chancellor go . . . Dwayne [Clark] said it was not his decision to let Frank Chancellor go. Dwayne said the decision was made by his superiors." But see also Kenneth McDougald Aff. ¶ 1 "Dwane [Clark] told me that he did not want to include Frank Chancellor in the layoff, but that Rick Kelley, who was the vice-president of Potlatch in Lewiston, Idaho, had made the decision." Chancellor also argues that Potlatch's reason for instituting the reduction-in-force (it was losing money) is pretextual, because Potlatch has offered no evidence that the Southern Division of Potlatch, of which the Warren operation is a part, was losing money. Chancellor also poses the question: If saving money was the reason for eliminating Chancellor's employment, why was Potlatch advertising for jobs? In its reply, Potlatch attaches a financial statement for the Southern Mill for 2002. Chancellor also supports his contentions with an affidavit of Mary Elizabeth Clark, the wife of Dwane Clark, in which she states "Dwane [Clark] told me that he thought that upper management wanted to get rid of [Chancellor] because of his health." See Mary Elizabeth Clark Aff. ¶ 1. As noted by Potlatch, to defeat a motion for summary judgment, Chancellor must provide evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. Gregory v. City of Rogers, 974 F.2d 1006, 1010 (8th Cir. 1992), cert denied, 507 U.S. 913 (1993). Further, unsubstantiated allegations, speculation, subjective perceptions and conjecture cannot be the basis for an inference of discrimination. Kunferman v. Ford Motor Co., 112 F.3d 962, 966 (8th Cir. 1997). Clark's statement that he "believed" that

Chancellor was terminated because of his health cannot be the basis for an inference of discrimination, because it is based on conjecture or speculation.

Although there is evidence of mendacity as to the identity of the decision maker and some question as to the reasons for the reduction-in-force (suggesting the termination was pretextual), the only evidence that Chancellor was fired because of his exercising his FMLA rights is the suspicious timing of his discharge. The timing, standing alone, is insufficient to create triable issues on the FMLA claim, so summary judgment is appropriate.

**C. Potlatch is entitled to summary judgment on Chancellor's ADA/ACRA claims because he cannot show that he suffered an adverse employment action under circumstances from which an inference of unlawful discrimination arises.**

The ADA prohibits discrimination in employment on the basis of an actual or perceived disability or the record of having such a disability. 42 U.S.C. § 12112(a). Chancellor's ADA/ACRA claims are analyzed under the McDonnell Douglas burden-shifting framework. Price v. S-B Power Tool, 75 F.3d 362, 364-365 (8th Cir. 1996). Chancellor has the burden of establishing his prima facie case by showing: (1) his condition was a qualified disability under the ADA's definition; (2) he was qualified to perform the essential functions of his job with or without a reasonable accommodation; and (3) that he suffered an adverse employment action under circumstances from which an inference of unlawful discrimination arises. Id. at 365. Assuming Chancellor has established his prima facie case, the burden of production shifts to Potlatch to present evidence of a legitimate, non-discriminatory reason for the adverse employment action. Id. The burden then shifts back to Chancellor to prove that Potlatch's asserted reason is pretextual and discrimination was the real reason for his termination. Id.

Potlatch argues Chancellor cannot make out his prima facie case, because he cannot establish either that he had a disability within the statutory definition of the ADA or that he suffered an adverse employment action under circumstances giving rise to an inference of discrimination.

In Chancellor's Deposition he stated that he was never told that he couldn't do the his job

because of a perceived disability.  Frank Chancellor Dep. at 117.  Chancellor supports his ADA/ARCA claim with the Affidavit of Ms. Clark, "Dwane [Clark] told me that he thought that upper management wanted to get rid of [Chancellor] because of his health." (Mary Elizabeth Clark Aff. at ¶ 1.)  However, as the Court stated earlier, Clark's statement is ambiguous, and cannot be used to support his response, because it is unclear whether his statement is founded on his belief, which would be inadmissible to support Chancellor's Response to Potlatch's Motion for Summary Judgement or his personal recollections.  Further, although Chancellor has shown that Mann suffered from diabetes at the time of her discharge, there is no evidence that Potlatch was aware of her condition.  Summary judgment is appropriate for Chancellor's ADA/ARCA claims because there is no genuine issue that Chancellor suffered an adverse employment action under circumstances from which an inference of unlawful discrimination arises.

**D.     Chancellor's ADEA claims survive summary judgment, because he has produced sufficient evidence such that a reasonable jury could find that his age motivated Potlatch's decision to terminate him**.

The ADEA prohibits an employer from discharging "any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  Any individual who is at least forty years old is included in the protected class.  29 U.S.C. § 631.

Chancellor's ADEA claims are analyzed like the others, using the McDonnell Douglas burden-shifting framework. Because Chancellor's position was eliminated as part of a reduction-in-force, he has the burden of establishing his prima facie case by showing: (1) he was within the age group protected by the ADEA; (2) he met applicable job qualifications; and (3) he suffered an adverse employment action; and (4) there is some additional evidence that age was a factor in the employer's action.  Stidham v. Minn. Min. & Mfg., Inc., 399 F.3d 935, 938 (8th Cir. 2005). Assuming Chancellor has established his prima facie case, the burden shifts to Potlatch to produce evidence of a legitimate, non-discriminatory reason for the adverse employment action. Bashara v. Black Hills Corp., 26 F.3d 820, 823 (8th Cir. 1994). The burden then shifts back to

Chancellor to prove that Potlatch's asserted reason is pretextual and discrimination was the real reason for his termination. Id.

Potlatch challenges element four (4) of Chancellor's prima facie case, and argues he has produced insufficient evidence to meet the requirement that "there is some additional evidence that age was a factor in the employer's action." To support his ADEA claim, Chancellor argues that Morgan and Mitchell, two younger Potlatch employees whose positions were eliminated as part of the reduction-in-force, were encouraged by Clark and Gary Rockett to make applications for positions within the hourly work force, and although they were not expressly promised a job, they were told that if they did apply for such jobs they would be hired. See Mann Aff. ¶ 3 "[Gary] Rockett made me understand that if Scott [Morgan] and Tim [Mitchell] applied [for hourly jobs in the Potlatch workforce] they would be hired . . . I was not offered a similar opportunity." See also Mitchell Aff. ¶ 1 "Dwane [Clark] told me . . . that I could choose to stay with Potlatch." But see Scott Alexander Aff. ¶¶ 6-7 "At no time did Potlatch offer Morgan another position during or after notification that his position was being eliminated . . . Morgan was told that he could submit an application to Potlatch following the elimination of his position if he was interested in later being considered for open hourly positions that existed on the third shift." ; Morgan Aff ¶¶ 3-4 "At no time did Potlatch offer me another position during or after notification that my position was being eliminated . . . I was told that I could submit an application to Potlatch following my termination if I was interested in later being considered for open hourly position that existed on the third shift." In its Reply brief, Potlatch explains that it talked about Mitchell about the possibility of returning to the bargaining unit because Mitchell, unlike the other employees who were selected for the November 2002 reduction-in-force had a right to reenter the bargaining unit at the time of his layoff. Jerry Ginter Aff. ¶¶ 4 "The practice in effect at that time was not to permit the transfer of employees who held a management/supervisory position back into the hourly workforce. In addition, employees who had never been in the Potlatch bargaining unit did not have a transfer right. Consequently,

management employees who had previously been in the bargaining unit, as well as employees who had never been in the bargaining unit at all, were not considered eligible for transfer to hourly jobs as a result of the 2002 reduction-in-force."

Chancellor also supports his ADEA claim with age-related statements made by Alexander and Kelley. Chancellor states that Alexander commented that "[Chancellor has] been here since I was in diapers or been here since Columbus came here" and "old man." Chancellor Dep. at 109. Chancellor also alleges that Kelley had made age-related comments, but Chancellor could not state when or where the comments had been made or the substance of the comments. Chancellor Dep. at 109.

Chancellor posits in his statement of disputed facts, "It is a matter of dispute whether Scott Alexander and Roger Kelley were decision makers with regard to the decision to eliminate Chancellor's position." Pl.'s Statement of Disputed Material Facts in Response to Def.'s Mot. for Summ. J. ¶ 5. The position that Alexander played a role in the firing finds circumstantial support from the Affidavits of Mann and Mitchell. Mann. Aff. ¶ 2 ". . . I was called in to meet with Duane Clark and Scott Alexander . . . [a]t that meeting, I was told I was being let go." Mitchell Aff. ¶ 1 "Dwane Clark, plant manager asked me to come to his office . . . [w]hen I got there, Dwane [Clark] and Scott Alexander were present . . . Dwane [Clark] advised me that my job had been affected by the reduction-in-force and I was being laid off." But see Alexander Aff. ¶ 4 "I was not a decision maker with regard to [the positions eliminated by the reduction-in-force] . . . I was, however, present as a witness when affected employees were notified that their positions were being eliminated." But see also Rick Kelly Aff. ¶ 9 "Neither Scott Alexander nor Roger Kelley, who worked in Human Resources, were decisionmakers in the decision to eliminate Chancellor's position." The Court finds sufficient circumstantial evidence showing a genuine issue of fact as to whether Alexander played a role in the reduction-in-force. There is evidence that Clark played no part in the decision to fire Chancellor but that someone from the plant submitted the names of the employees to be affected by the reduction-in-force. The Court

believes Chancellor has identified sufficient evidence to make out his prima facie case of ADEA discrimination.

The burden of production shifts to Potlatch to present evidence of a legitimate, non-discriminatory reason for Chancellor's termination. Again, Potlatch has met its burden of production–Potlatch was experiencing financial difficulties and it instituted a reduction-in-force to save costs–so the burden shifts to Chancellor to satisfy the third prong of his test.

Chancellor's ADEA claim survives summary judgment because he has produced evidence which could be reasonably interpreted to show that younger employees were treated more favorably than older employees in the reduction-in-force, he has raised questions about the identity of the decision maker and the justifications for the reduction-in-force and he has testified to statements by Alexander reflecting an age-bias, who was present when the employees were told they were being discharged. The Court finds the Motion for Summary Judgment should be denied with respect to Chancellor's ADEA claims.

### III. Conclusion

Upon consideration, for the reasons discussed herein, the Court finds Defendant's Motion to Strike should be **denied**. Defendant's Motion for Summary Judgment should be and hereby is **granted in part and denied in part**. Plaintiff's ADA/ACRA and FMLA claims are hereby dismissed with prejudice. The remainder of Defendant's Motion for Summary Judgment is denied. An Order of even date, consistent with this opinion, will issue.

**IT IS SO ORDERED** this 8th day of November, 2005.

/s/ Harry F. Barnes
Hon. Harry F. Barnes
U.S. District Judge